July Term, 1881, No. 8.                 January 29th, 1882.

# The Manufacturers' National Bank *versus* Jones.

1. A bank has no lien upon money standing to the credit of one of its depositors for the amount of a note of such depositor, discounted by the bank, but which has not matured.

2. The mere insolvency of the depositor intervening before the maturity of the note, cannot affect the question as against a creditor attaching the fund.

3. A bank, therefore, cannot set-off against the claim of an attaching creditor the amount of unmatured notes indorsed by the depositor, and discounted for him by it, though he is at the time insolvent.

Before Sharswood, C. J.; Mercur, Gordon, Paxson, Trunkey, Sterrett, and Green, JJ.

Error to the Court of Common Pleas, No. 2, of *Philadelphia County.*

*Scire facias sur* foreign attachment in a suit of William W. Jones against James Fayer, defendant, and the Manufacturers' National Bank, garnishee. Judgment was entered by confession against the defendant for $1260.62.

Upon the trial in the Court below, before Mitchell, J., the following facts appeared:

The bank account of William Fayer, agent, with the garnishee, showed a balance in favor of the depositor, December 23d, 1879, of $913.74. William Fayer was agent for James Fayer, of Liverpool, England, and the balance in bank was the property of James Fayer.

Prior to the attachment, two notes were discounted by the bank for the benefit of William Fayer, agent, one of the said notes being dated November 6th, 1879, made by James Harrison, to the order of William Fayer, agent, and by William Fayer, agent, indorsed, for $255.90, due in sixty days, and protested for non-payment on the 8th day of January, A. D. 1880; and the other of the said notes, made by Franklin Baker, to the order of William Fayer, agent, and by William Fayer, agent, indorsed, dated December 4th, 1879, for $500, due in sixty days, protested February 5th, 1880. The amount of the discounts was credited to William Fayer, agent, and formed part of the credit side of the account. The bank did not know, either at the time of the discounting of the notes, or at the time of the attachment, for whom William Fayer, agent, was agent, or whether he was agent for any one. At the time of the attachment William Fayer, doing business as William Fayer, agent, was insolvent.

The Court reserved the point whether, under the facts found, the defendants were entitled to their set-off.

The verdict was for the plaintiff for $977.70, of which $913.74 was principal, and $63.96 interest; and the jury found the facts specially as follows:

1. William Fayer was agent for James Fayer at the time of the attachment, December 22d, 1879.

2. That the bank did not know for whom its depositor, William Fayer, agent, was agent, either at the time of the discounting of the notes or at the time of the attachment.

3. That William Fayer, doing business as William Fayer, agent, was insolvent at the time of the attachment.

4. That the set-off of the bank upon the two notes, if the Court determines that it is to be made, amounts to $810.

March 22d, 1881. The Court found that the bank was not liable for the interest, reduced the verdict to $913.74, and entered judgment on the point reserved for the plaintiff.

The garnishee then took out a writ of error, assigning as error the entry of the above judgment.

*Henry C. Olmstead, Robert H. Neilson,* and *Aubrey H. Smith,* for plaintiff in error.

The single question is, whether a bank, on the insolvency of its depositor, may set off unmatured paper of the said depositor against the claim of an attaching creditor?

An attaching creditor occupies no better position than his debtor: Good *v.* Grant, 26 P. F. Smith, 52; Riddle *v.* Etting, 8 Casey, 412; Myers *v.* Baltzell, 1 Wr., 491.

It is a well-known custom of banks to treat the deposit of a customer as security for his discounts: Stewart *v.* Bank, 6 W. N. C., 399.

The proceeds of the notes were passed to the credit of the account attached, and any one claiming the entire balance must take it subject to the rights of the bank.

A transfer by indorsement is equivalent to the drawing of a new note: Stephens *v.* Monongahela Bank, 7 W. N. C., 491.

The right of a bank to set off unmatured paper of an insolvent depositor has been many times ruled: Stewart *v.* Bank, 6 W. N. C., 399; Bank *v.* Hoffman, 34 L. J. Ch., 285; Demmon *v.* Bank, 5 Cush., 194; Aldrich *v.* Campbell, 4 Gray, 284.

The right of a party whose debt is due to compel an insolvent debtor to set off a claim against him not due has been ruled in Jordan *v.* Sharlock, 3 N., 366.

When it is shown to the Court that the dealings of the lender of money have been upon the faith of a security in his hands, that this security, though changeable at the will of

[The Manufacturers' National Bank v. Jones.]

the debtor, was at the time of the latter's insolvency suffi-
cient to meet the lender's claim, and was in the latter's ac-
tual possession, it is not very unreasonable for the Court to
allow the parties to remain in the position in which they
have placed themselves.

*W. H. Peace* and *Frank P. Prichard,* for defendants in
error.

The bank could only claim such rights as they could assert
against the principal: Bank *v.* Jones, 6 Wr., 536.

*Non constat* that the principal was not entirely solvent and
would not have remitted on application.

The debt owing by William Fayer, agent, was not only
unmatured but was also contingent. The indorser is not
liable until after presentment to, demand of, and refusal by
the maker.

The cases cited by plaintiff in error in support of its main
proposition do not bear it out. See, *In re* Commercial Bank,
L. R., 1 Ch. Appeal, 538; Spaulding *v.* Backus, 122 Mass.,
553; Dougherty *v.* The Bank, 9 W. N. C., 1; Bower *v.* Gas
Co., 22 Weekly Rep., 740; Parsons *v.* Root, 41 Conn., 161;
Beckwith *v.* Union Bank, 9 N. Y., 211; 4th Nat. Bank *v.*
City Nat. Bank, 68 Ill., 398.

Any other rule would render impossible the system of
credit now existing between banks and their depositors. It
is possible that a depositor may be insolvent at the time he
obtains the discount, and that the discount for him by the
bank of paper drawn or indorsed by his friends may be the
very means by which he expects to carry on his business and
relieve himself from his embarrassments. Can it be that
the bank, after agreeing to advance the money on the security
of the paper, and receiving a consideration therefor, can, be-
fore maturity, seize upon the customer's deposit and thus
ruin him? It is also possible that one carrying on a flourish-
ing business would, if the business were suddenly wound up
without opportunity to fulfil contracts or realize assets, be
insolvent. Is it possible that a bank, on a mere allegation
of insolvency or upon an attachment levied, can require im-
mediate payment of discounted paper out of the deposits,
and then justify its action by proof of an insolvency which
it has helped to create?

JANUARY 23D, 1882.—PER CURIAM: It is established, as
is shown in the opinion of our brother TRUNKEY, in Dough-
erty *v.* Central National Bank, 9 Weekly Notes, 1, that a
bank has no lien on money standing to the credit of one of
its depositors for the amount of a note of such depositor,

[Appeal of Philip Mitton *et al.*]

discounted by the bank, but which has not matured. It is clear that the mere insolvency of the depositor intervening cannot affect the question as against a creditor attaching the fund.

Judgment affirmed.