Southwark National Bank *v.* Beck, Admx., Appellant.

Argued October 2, 1929.

214

*Philip Dorfman,* and with him *J. Jerome Katz,* for
appellant.

*Edreth P. Acton,* and with him *William S. Furst,*
for appellee.

OPINION BY GAWTHROP, J., January 29, 1930:

Benny Beck was a depositor with the plaintiff bank.
On November 2, 1927, he borrowed $600 from the bank
and gave it his promissory note for that amount, pay-
able three months after date. At the same time he
executed and delivered to the bank a collateral agree-
ment, which provided, inter alia, as follows:

"In consideration of granting any credits by said
bank, the undersigned agrees that in case of the failure,
insolvency, receivership or death of the undersigned,
...... any and all claims or demands against, or notes
or other obligations of the undersigned held by said
bank, shall, at its option immediately become due and
payable, notwithstanding the due date stated in the
obligation, and all sums of money on deposit with said

bank or in its possession belonging to the undersigned, ...... shall immediately become the subject of set-off by said bank against any liability or indebtedness due or to become due said bank by the undersigned, either directly or by endorsement or contingently, and may be charged immediately by said bank against any such liability or indebtedness of the undersigned, and may at all times at the option of said bank, be held and immediately appropriated by said bank to the payment of all notes, endorsements, obligations or indebtedness in any form, matured or unmatured, made by the undersigned, which said bank may hold.''

On November 10, 1927, Benny Beck died intestate and insolvent. On that day he had a balance standing to his credit on deposit with the bank in the sum of $172.61, which the bank subsequently appropriated to the partial payment of the indebtedness of the decedent on the note. Later on April 12, 1928, the bank brought this suit against his estate to recover the balance due on the note. The defendant administratrix filed an affidavit of defense and a counter-claim, in which she admitted the execution and delivery of the note, but averred that the estate was insolvent and claimed the sum of $172.61, which the plaintiff had set off against its claim on the note. The plaintiff replied to the counter-claim by pleading the agreement above quoted. The court below held that the bank had authority to appropriate the deposit as it did and entered judgment for the plaintiff for the amount of its claim. The defendant has appealed.

The single legal proposition presented for our consideration is the right of the bank to appropriate the deposit of the decedent to the partial payment of the note. It has been uniformly held by our Supreme Court that the general rule is that demands, such as bank deposits, cannot be appropriated in satisfaction of unmatured debts, when death intervenes, or an as-

signment for the benefit of creditors has been filed, or receivers in bankruptcy selected, for all creditors have the right to share equally in the assets: Kurtz v. County National Bank, 288 Pa. 472, 475, and cases there cited. ''A bank has no lien on money standing to the credit of one of its depositors for the amount of a note of such a depositor discounted by the bank, but which has not matured'': Manufacturers National Bank v. Jones, 2 Penny. 377. But a creditor may avoid the effect of this rule and protect himself by a contract with his debtor under which the former shall have a lien upon any fund in his hands belonging to the latter, or the right to appropriate the fund, or any part thereof, under fixed conditions, to the payment of a debt not due. This right of a bank to protect itself by such a contract was recognized by our Supreme Court in the Kurtz case and in Blum Bros. v. Girard National Bank, 248 Pa. 148, and Thompson v. Hazelwood Savings & Trust Co., 234 Pa. 452.

In the case before us such a contract was made. While that contract did not expressly state that the bank had a lien on the deposit for the payment of the note, it did provide for the acceleration of the maturity of that obligation in the event of the death of the depositor, and that the deposit should immediately become the subject of setoff against any indebtedness due or to become due by the depositor and might at all times be held and appropriated by the bank to the payment of all notes of the depositor, matured or unmatured. In our view the agreement amounted to a pledge of the deposit and gave the plaintiff a lien thereon. The consideration to support this agreement was the benefit to the maker of the note in obtaining the loan. The contract was made at the time of making the note and with special reference to it. The agreement is much stronger for the plaintiff than was a somewhat similar agreement construed by the

Circuit Court of Appeals in the Third Circuit in Corn Exchange National Bank v. Locher, 151 Federal 764, relied on by the appellant, in which it was held that the agreement did not create a lien, but gave the bank an option which could not be exercised after the appointment of a receiver, because the rights of others had then attached. The agreement in the case at bar is more like that in Wright v. Seaboard Steel & Manganese Corp., 272 Federal 807, in which the Circuit Court of Appeals in the Second Circuit distinguished Corn Exchange National Bank v. Locher, supra, in deciding that a lien existed at the time of the receiver's appointment. We are convinced that a proper conclusion was reached below. See Schiff v. Schindler, 98 Pa. Superior Ct. 207.

The judgment is affirmed.