## Freed, Trustee, v. Shrewsbury Savings Institution.

*McClean Stock*, for plaintiff.

*George Hay Kain* (of *Cochran, Williams & Kain*), and *W. G. Allen*, for defendant.

SHERWOOD, J., June 23, 1930.—This is a petition for mandamus in the form of a case stated. The facts are agreed to. The relevant facts are: Henry W.

Rehmeyer was the owner of twenty-seven shares of the capital stock of the Shrewsbury Savings Institution, as evidenced by two certificates therefor; the one, No. 205, dated June 26, 1919, for twelve shares, and the other, No. 206, dated Oct. 10, 1919, for fifteen shares. He was adjudicated a bankrupt June 3, 1929. His duly elected trustee in bankruptcy sold and attempted to transfer to the purchaser the bankrupt's shares of stock in defendant bank. The defendant bank refused to transfer because bankrupt was indebted to it in an amount greater than the market value of the shares of its stock, and, further, because notice of its right of lien and right to refuse transfer had been stamped on the stock certificates pursuant to section 15 of the Act of May 5, 1911, P. L. 126.

Defendant bank was incorporated under a special act of assembly approved April 26, 1850, P. L. 786. Its charter was extended from time to time, and on Dec. 31, 1921, after proceedings duly had, it came under the provisions of the Act of May 13, 1876, P. L. 161, entitled "An act for the incorporation and regulation of banks of discount and deposit," as provided in section 32 thereof. Letters patent were duly granted to it thereunder, and it was duly reorganized in conformity therewith.

Article 27 of the by-laws of the Shrewsbury Savings Institution, as duly amended on Dec. 15, 1877, and continuously since in force, provides as follows: "The institution shall have a lien upon the stock of any stockholder who shall be the maker, drawer, acceptor or endorser of, or in any wise liable upon any note, draft, bill of exchange or other security for the payment of money held by the institution which shall be unpaid at maturity.

"Whenever any note, draft, bill of exchange or other security for the payment of money held by the institution on which any stockholder shall be liable as maker, drawer, endorser or in any wise shall be due and unpaid for the space of six months, it shall be the duty of the cashier to notify such stockholder in writing that if said indebtedness shall remain unpaid for the space of thirty days his stock will be sold at public sale to pay the same. At the expiration of the time specified in said notice, said stock, or so much thereof as shall be necessary to pay the debt, shall be offered at public sale after ten days' notice by handbills in the most public places in Shrewsbury Borough, and sold to the highest bidder (the directors reserving the right to reject any bid they may deem insufficient) and the proceeds to be applied to the payment of such indebtedness."

The petition for mandamus is at the instance of the trustee in bankruptcy. Counsel at the argument verbally agreed that if the court doubted the petitioner's right and felt that the proceedings should have been instituted by the purchaser rather than the trustee, that fact in itself should not prevent a decree against the bank compelling transfer to the purchaser from the trustee if the lien of the bank, under its by-laws as printed on its certificate, was not enforceable.

The question involved is: May a state bank, incorporated under the special Act of April 26, 1850, P. L. 786, which subsequently comes under the general Banking Act of 1876, P. L. 161, and reorganizes thereunder, retain a lien upon the shares of its capital stock owned by a stockholder for a purpose of securing itself for loans made to said stockholder?

The general Banking Act of 1850, P. L. 477, article x, provides: "The stock of the bank shall be assignable and transferable on the books of the corporation only, and in the presence of the president or cashier, in such manner as the by-laws shall ordain; but no stockholder indebted to the bank for a debt actually due and unpaid, shall be authorized to make a transfer or receive a

dividend until such debt is discharged, or security to the satisfaction of the directors given for the same." This restricted the transfer of stock by an indebted stockholder. However, its provisions are only applicable to banks of issue and not to savings banks: Merchants' Bank v. Shouse, 102 Pa. 488. Later, the general Banking Act of 1876, P. L. 161, for the incorporation of banks of discount and deposit, also provided a lien on the debtor's stock. Section 21 provided: "And no shareholder shall sell or transfer any shares in the capital stock held in his own right so long as he shall be liable, either as principal debtor, surety or otherwise, to the corporation, for any debt without the consent of a majority of the directors." The above acts of assembly indicate the early legislative policy to give a bank a lien on its stock for the indebtedness of the stockholder. In Bank of Millvale v. Ohio Valley Bank, 234 Pa. 1, it was held that the lien which a state bank, organized under the Act of May 13, 1876, P. L. 161, has upon the shares of capital stock owned by its stockholders has been taken away by the Act of June 24, 1895, P. L. 258. The earlier case of Sproul v. Standard Plate Glass Co., 201 Pa. 103, held that the same Act of June 24, 1895, P. L. 258, giving an absolute right to a purchaser of pledged stock to have the stock transferred upon the books of the corporation, repealed section 7 of the Act of April 29, 1874, P. L. 73, which directs that no certificate shall be transferred so long as the holder thereof is indebted to said company, unless the board of directors shall consent thereto.

Prior to the Act of 1895, corporations, including banks of discount and deposit, were vested with a lien upon their stock for an indebtedness owing by a stockholder to the corporation. This act favors the sale and transfer of stock and avoids anything tending to hamper such transactions. Clearly, the purpose of the act was to facilitate the transfer of stock. It gives an absolute right of sale inconsistent with the right to refuse a transfer, and it follows that section 21 of the Act of 1876 is necessarily repealed.

It is further to be noted that such lien is more expressly taken away by the Act of June 14, 1901; P. L. 561, which applies to savings institutions. This act provides by section 2: "That no corporation under this act shall take as security for any loan or discount, a lien on any part of its capital stock, but the same surety, both in kind and amount, shall be required of persons, shareholders and not shareholders; and no such corporation shall be the holder or purchaser of any of its capital, unless such purchase shall be necessary to prevent loss on a debt previously contracted in good faith, on surety which at the time was deemed adequate for the payment of such debt, without a lien upon such stock, or in case of forfeiture of such stock, for the nonpayment of instalments due thereon, and the stock so purchased shall, in no case, be held by the corporation so purchasing for a longer period than six months, if the same can be sold for what such stock cost the corporation."

We look in vain through the act incorporating the Shrewsbury Savings Institution for any express authority to acquire a lien against the shares of its stockholders for loans, but conceding that it had that authority, it would follow that this right was taken away by the Acts of 1895 and 1901; the first looking toward the facilitation of the transfer of stocks of Pennsylvania corporations, and the second expressly prohibiting the taking as security for any loan a lien on any part of its capital stock. It follows that the bank did not have a lien on the stock of a shareholder for his indebtedness unless the enactment of the Pennsylvania Legislature, known as the Uniform Stock Transfer Act of 1911, P. L. 126, § 15, can be construed as giving a right of lien to corporations which comply with the provisions of that act. Section 15 provides: "There shall be no lien in favor of a corporation upon the shares

represented by a certificate issued by such corporation, and there shall be no restriction upon the transfer of shares so represented, by virtue of any by-law of such corporation, or otherwise, unless the right of the corporation to such lien or the restriction is stated upon the certificate." Our view of the provision of this section is that it is not intended to create a right of lien where none exists, but where a valid lien can be created it is aimed to protect the purchaser or pledgee of stock from secret liens by making statement upon the certificate essential to validity; that the underlying purpose of this act is the protection of transferees. It does not effect the repeal of the Act of 1901, which relates to banks and trust companies, because the reasons underlying that act are different from that underlying the Stock Transfer Act. The Act of 1901 prohibits liens by banks and trust companies, because it is deemed impolitic that the bank should take its own shares as security, while the provisions of the Stock Transfer Act look to the safety of the transferee by preventing the enforcement of secret liens not stated on the certificate.

The decision of the United States Supreme Court upon the Federal Banking Act strengthens our conclusion. In the case of Bank v. Lanier, 78 U. S. 369, it was held, having in view the provisions of the Federal Acts of 1863 and 1864 above referred to, that loans by national banks to their stockholders do not give a lien to the bank on the stock of such stockholders. To the same effect is Bullard v. Bank, 85 U. S. 589.

Counsel for the bank insists that, apart from any statutory lien, the bank may secure a lien by agreement with its borrower, and that this was in effect accomplished by the by-law. In support thereof the cases of Schiff v. Schindler et al., 98 Pa. Superior Ct. 207, and Southwark National Bank v. Beck, Admin'x, 98 Pa. Superior Ct. 213, are cited. In the latter case, a depositor in plaintiff bank borrowed money from it, for which he gave a promissory note, and the same time executed and delivered to the plaintiff a collateral agreement, wherein he agreed that, in the event of his death or insolvency, all of his notes or obligations held by the plaintiff should, at its option, immediately become due and payable, irrespective of the date of maturity of the obligation, and that all sums of money cn deposit with the said plaintiff bank should become the subject of set-off by the said bank against any liability or indebtedness of the defendant. This contract was held to be valid and the bank had authority to appropriate the deposit. There is no statutory prohibition preventing such an agreement between the parties, and, therefore, the agreement was held to be valid and to give to the bank the right to set-off its indebtedness against the deposit of the insolvent defendant. The case at bar is distinguished in that there is a statutory prohibition concerning the creation of such a lien by the defendant bank by agreement or otherwise, under the Act of 1901, hereinbefore recited. In 14 Corpus Juris, 790, the rule is asserted to be: "If, however, a by-law giving a lien to the corporation is not merely unauthorized but is one prohibited by statute, as where the statute prohibits the corporation from making a loan on the security of its own shares, the by-law is void and a transferee takes free of the right of the corporation to assert a lien." It follows that the bank, not having a lien by reason of its by-laws, should transfer the stock to the purchaser from Rehmeyer's trustee for the following reasons:

(a) The statute gives the plaintiff no lien upon its capital stock for loans of its stockholders, but, to the contrary, prohibits such lien.

(b) As a contract, the by-law is ultra vires, because in conflict with the Acts of June 24, 1895, P. L. 258, and June 14, 1901, P. L. 561.

And now, to wit, June 23, 1930, it is ordered and decreed that judgment be entered in favor of the plaintiff and against the defendant and that a writ of peremptory mandamus be issued in behalf of the plaintiff, requiring the defendant, upon surrender of certificates Nos. 205 and 206, to transfer the twenty-seven shares of stock on its book to the purchaser from the trustee and to issue a new certificate therefor.