## Caplan Estate

*James D. Zimmer,* for exceptant.
*J. Sherman McLaughlin,* contra.

RAHAUSER, J., October 8, 1968.—Irwin Caplan died June 26, 1968. His widow, Rosemarie Caplan, was named administratrix of his estate. She filed a petition with the court praying for a citation directing the Mellon National Bank and Trust Company to show cause why funds on deposit and to the credit of decedent should not be paid over to her as administratrix of her deceased husband's estate.

The matter came on for hearing, at which time the court dismissed the petition.

Exceptions were filed to the adjudication of the court, as follows:

"EXCEPTIONS TO ADJUDICATION

"AND NOW, Rosemarie Caplan, administratrix of the estate of Irwin L. Caplan, excepts to the adjudication of the Honorable William S. Rahauser, Judge,

dated the 8th day of October, 1968, for the following reasons:

"1. The decree of the court was against the law.

"2. The decree of the court was against the evidence.

"3. The decree of the court was against the law and evidence.

"4. That the learned judge erred in finding that the agreements between decedent, Irwin L. Caplan, and Mellon National Bank and Trust Company 'with full recourse' created a debtor-creditor relationship in the form of a loan.

"5. That the learned judge erred in applying the law of Lawrence J. Goldstein v. Jefferson Title & Trust Company, 95 Pa. Super. 167, to the instant case, in that no debt was owed by depositor Irwin L. Caplan at the time of his death.

"6. That the learned judge erred in applying the law of the Commercial Code, 12A Purdon's Statutes, Section 3-507(2) to the instant case which is contractual in nature.

"7. That testimony by Mellon National Bank and Trust Company was in violation of the Statute of Frauds and the Dead Man's Act, as to an oral agreement by decedent and said bank to charge decedent's checking account.

"8. That the learned judge erred in allowing Mellon National Bank and Trust Company to appropriate to itself the checking account in the name of Irwin L. Caplan, in the amount of $2,225.89 as security for a loan.

"9. That the learned judge erred in dismissing exceptant's petition which would have required Mellon National Bank and Trust Company to pay over the sum of $2,225.89 to Rosemarie Caplan, administratrix of the estate of Irwin L. Caplan."

Decedent was engaged in a business under the trade name of Standard Heating and Remodeling

Service Company. Decedent maintained accounts under said name with the Mellon National Bank and Trust Company, and he also maintained an individual checking account which, at his death, amounted to $2,115.

On three loans, known as the Jenkins, Carson and Knott loans, the bank made these particular loans with full recourse. In the cases of Jenkins and Knott, they contained the following pertinent language:

"For value received, the undersigned hereby sells, assigns, transfers and sets over unto Mellon National Bank and Trust Company with full recourse, all the undersigned's right, title and interest in and to the within Home Improvement Installment Contract.

"Irwin L. Caplan

"(per) Standard Heating & Remodeling Service Co."

In the case of Carson, the following language was used:

"For value received, the undersigned hereby sells, assigns and transfers unto Mellon National Bank & Trust Company, with full recourse, all its right, title and interest in and to the within note.

"Standard Heating and

Remodeling Service Company

"/s/ Irwin L. Caplan (owner)"

The testimony indicates that the bank had difficulty in collecting the above notes and had charged delinquencies against his account during his lifetime.

The testimony of Mr. May, an officer of the Mellon National Bank and Trust Company, called as of crossexamination by petitioner, indicates the history of these transactions and the agreement of the parties:

"Q. Now, in connection with the contracts of Knott, Jenkins and Carson, could you describe the circumstances of having them marked for recourse: In other words, the reason for that is they are distinguished from the other F.H.A. loans?

"A. On the Jenkins contract, this was turned down by myself because it would over extend the borrower, Mr. Caplan. I rejected that on August 8, 1966; and on August 15th one of my assistants discussed this problem with the manager of our office, when Mr. Caplan had asked if he would buy these if he would assume responsibility. So they agreed on the 15th of August to accept these for recourse, on Mr. Caplan's indorsement to guarantee payment in the event the customer would not pay.

"Q. And how did it work out?

"A. Well, it works this way: We agreed to take this on and we agreed to try to collect this money from the customer, and the dealers generally feel that the bank's name—that the bank will collect this money better than he can. The arrangement we have with this dealer—

"Q. With this particular dealer?

"A. With this particular dealer, I believe was that our delinquency report is run on a 30 days delinquency. That means that we will work this up to the very last day of the month, and at that time we call Mr. Caplan or his representative to come down and give us a check.

"Q. May I ask you is that the case in the other two accounts,

"A. It is the same case in Carson and Knott—

"Q. As well as Jenkins?

"A. Yes. But then we ran into a problem: The kind of a man Mr. Caplan was, he was never in his office; so we reached him on the telephone, and he came in one day and I said, 'Supposing that we cannot reach you and you are out on a job, will it be all right if we charge your checking account?', and he said 'Yes. This is fine.'

"Q. Did you have any charges due prior to his death in regards to his account, applicable to these three accounts?

"A. Yes, I did. On March 29, 1968 we charged one payment of $33.66 on the Jenkins account. On April 30, we charged a payment on the accounts of $53.92. The rest of the charges were all after his death.

"Q. Those are the only ones you have?

"A. The only charges we have records of. . . ."

The seventh exception filed by the administratrix avers that the testimony of Mr. May was not admissible under the Dead Man's Act. This exception of petitioner must be dismissed, because it was petitioner who called Mr. May as a witness and there was no objection to his testimony at the time he testified. In Hosfeld Estate, 414 Pa. 602, at pages 604 and 605, the court said:

"There is no doubt that the testimony of Hosfeld was adverse to the interest of the estate and that, ordinarily, such testimony would be inadmissible under the so-called 'Dead Man's Act'. However, the instant record reveals that Hosfeld was called as a witness on cross-examination by counsel for the exceptant and no objection made to his testimony. Under such circumstances. Hosfeld's testimony became admissible. As we stated in Commonwealth Trust Co. v. Szabo, 391 Pa. 272, 279, 138 A. 2d 85, '. . ., by calling him as of crossexamination, and, by examining him as to matters which occurred during the decedent's lifetime, rendered him a competent witness on all relevant matters and removed his prima facie disqualification.' The manner in which Hosfeld's testimony was elicited removed any disqualification under the so-called 'Dead Man's Act' and his testimony should have been considered by the court below."

See also McGary Estate, 355 Pa. 232, 236. The seventh exception also cites the statute of frauds but cites no cases in support of its position that the agreement testified to by Mr. May was required to be in writing, and the court is of the opinion that this is not required by said statute. Accordingly, this excep-

tion will be dismissed in its entirety.

The bank and decedent, Irwin L. Caplan, referred to the Jenkins and Knott instruments as contracts and to the Carson instrument as a note in the endorsements thereon, whereby the bank acquired these instruments from decedent with right of full recourse against him. The original contracts or notes all provided that if the "Buyer" (Jenkins, Carson and Knott, respectively) failed to make any monthly installment when due, the "Contractor (Caplan) may declare immediately due and payable the entire unpaid Time Balance . . . and all other sums due under the terms hereof." These contracts or notes also provided that:

"Buyer acknowledges notice that Contractor intends to assign this Contract to Mellon National Bank and Trust Company ('Bank'). In the event of such assignment and notice thereof to Buyer, Buyer agrees to pay all monthly installments and other sums due hereunder direct to Bank at any of its offices. Upon such assignment Bank shall have all the rights and remedies of Contractor under this Contract, but shall have none of Contractor's obligations, duties or liabilities, all such obligations, duties and liabilities to be and remain solely those of Contractor."

Under the provisions above quoted, it is clear that the bank had a right to declare each of the debts payable in full when any monthly installment on the debt was not paid when due.

Mr. May testified that there were times when the monthly installments were not paid by the original debtors when due and that after trying to make the collections for 30 days, the bank would call the original contractor, Irwin L. Caplan, or his representative, to come down and give the bank a check. One day, after Mr. Caplan came in following such a call, Mr. May said to him:

"Supposing that we cannot reach you and you are out on a job, will it be all right if we charge your checking account?"

And he said: "Yes. This is fine."

This agreement made between the parties at a time when there was a delinquency on the contracts or notes, whereby Mr. Caplan was personally indebted to the bank under the terms of the endorsements thereon, and whereby the bank could have demanded immediate payment of the delinquent obligation in full, was supported by adequate consideration. Mr. Caplan faced the possibility that if he did not so agree, the bank might accelerate the obligation and require immediate payment in full, as it had the right to do. He also received a positive benefit in that he would not thereafter have to come to the bank with a check to pay up future delinquencies. This would be a benefit to him as well as an aid to the bank.

This oral agreement of the parties was mutually convenient and satisfactory to the parties and, on a number of occasions thereafter, delinquencies on the monthly installments on these obligations were charged to the personal checking account of Mr. Caplan prior to his death. There was no proof of any objections to such charges by Mr. Caplan during his lifetime, nor does petitioner now seek to set them aside.

At the time of the death of Mr. Caplan, on June 26, 1968, the three obligations of Jenkins, Carson and Knott remained unpaid. The testimony indicates that all three obligations were in default at that time. Under the terms of these obligations the bank had the right to accelerate the debts by virtue of the defaults. In addition thereto, under the terms of the oral contract with Mr. Caplan, the bank had the right to charge any delinquent installments against the personal checking account of Mr. Caplan, which right

was intended by the parties to continue until these three obligations were paid in full. The balance in Mr. Caplan's checking account on June 26, 1968, the date of his death, was $2,225.89. As of the date of the hearing on the petition filed by the administratrix to obtain said funds, i.e., September 3, 1968, a number of delinquencies on the three loans had been charged against this account and the balance in the account was then $2,110.97. The amount due on the three loans exceeds this amount.

The court is of the opinion that the facts in this case resemble, in large measure, the facts in Southwark National Bank v. Beck, 98 Pa. Superior Ct. 213, wherein the court held that the contract between the bank and its depositor authorized the bank to appropriate the deposit to the partial payment of the depositor's debt to the bank after his death. The collateral agreement in the cited case was in writing and the acceleration clause was more specific in its terms, but it did not state that the bank was to have a lien against the deposit to secure the bank. Nevertheless, the court said, at page 216:

"In our view the agreement amounted to a pledge of the deposit and gave the plaintiff a lien thereon. The consideration to support this agreement was the benefit to the maker of the note in obtaining the loan. The contract was made at the time of making the note and with special reference to it."

In the present case, the consideration to support the agreement was the nonexercise of the right of the bank to demand payment in full of the then delinquent note or contracts, and the waiver of the bank of its requirement that Mr. Caplan come to the bank personally on the thirtieth day after the inception of a delinquency with his own check in payment of such delinquency. The contract was made at a time when

the original contract was in default, and with special reference to that delinquency and to other possible future delinquencies against which the bank was seeking additional and more satisfactory protection.

In the opinion of the court, the obligation of Mr. Caplan cannot properly be described as an unmatured debt in view of the defaults on the three obligations and the accelerating clauses in each of them, together with the full recourse endorsements to the bank signed by Caplan. Accordingly, Kurtz v. County National Bank, 288 Pa. 472, 475, and cases there cited, are not relevant here. It is the opinion of the writer that this case more nearly resembles Gaugler Estate, 42 D. & C. 2d 453, where the court said:

"The rules governing set-offs against insolvent estates are clear, though the cases in which they were laid down have become very old. The debtor of an insolvent estate may set off his debt against any claim owned by him against decedent which was due and owing and reasonably ascertainable on the date of death. In Bosler v. The Exchange Bank, 4 Pa. 32, the court held that a bank could not set off decedent's notes held by it against its debt to him, when such notes did not become due until some time after the date of death. Shortly after this decision, a similar case arose in Light v. Leininger, 8 Pa. 403, except that the obligation of decedent was due and owing at the time of his death, and there the court followed the theory set forth in Bosler and allowed a set-off. While this appears to prefer the estate creditor with a set-off to those without, when the usual rules of distribution of an insolvent estate would not otherwise do so, this consideration gives way to the fact that the actual liability existing between parties with cross claims is the net amount due from one to the other. There are not two debts, but only one—the difference

between the two claims—and it is this amount only which the bank can claim from the estate as a general creditor."

It will be noted that Gaugler Estate, supra, involved an insolvent estate and that the right of the bank to a setoff turned upon whether or not there was an obligation due and owing to the bank. The court found that decedent was indebted to the bank at the time of his death and so it allowed the setoff, even though the estate was insolvent. If we assume that Mr. Caplan's estate is insolvent, it still appears that at the time of his death all three of the notes or contracts which he had endorsed with recourse to the bank were delinquent and that he was, therefore, indebted to the bank on each of them. This would have entitled the bank to a setoff under Gaugler Estate, supra, even in the absence of the oral agreement authorizing it.

If the estate of Irwin Leonard Caplan is solvent (the record is silent on this matter), it would appear that the bank is authorized to set off the debt *presently* due it. See Hicks, Administratrix v. National Bank of Northern Liberties, 168 Pa. 638. If the estate is insolvent, this could readily have been shown by the administratrix who should have a record of decedent's assets and liabilities. Since the estate seeks the funds in the possession of the bank, it has the burden of showing a state of facts entitling it to the funds when its claim is opposed. If it seeks to gain possession of the funds on the ground that the estate is insolvent, it should have submitted proof of such insolvency. In the absence of such proof by the administratrix, the estate will be deemed to be solvent and the bank will be permitted to assert its right of setoff, on authority of Hicks, Administratrix v. National Bank of Northern Liberties, supra.

The administratrix has also filed exceptions to the adjudication of the hearing judge on the ground that he erred "in applying the law of the Commercial Code, 12A Purdon's Statutes, Section 3-507(2) to the instant case which is contractual in nature." While the instruments which gave rise to this litigation were referred to in the endorsements signed by decedent, Irwin L. Caplan, as contracts in the Jenkins and Knott cases and as a note in the Carson case, they were essentially similar and may properly be considered as notes for the purposes of this discussion. In the opinion of the court, the Commercial Code, above cited, is applicable to all three of these instruments, and the bank had an *immediate* right of recourse against Mr. Caplan, the endorser of the notes, when they were not paid according to their terms. Furthermore, the code did not interfere with the right of set-off. See Middle Atlantic Credit Corporation v. First Pennsylvania Banking and Trust Company, 199 Pa. Superior Ct. 456, 460:

"Both the original and the amended code preserve rights of set-off under existing law and nothing more."

The transactions here involved were subject to the provisions of the Commercial Code and exception 6 to the adjudication of October 8, 1968, will accordingly be dismissed.

To summarize, Irwin L. Caplan was indebted to the Mellon National Bank at the date of his death, and the amount of such indebtedness was, and continues to be, greater than the amount of his checking account at the bank. The refusal of the bank to pay the administratrix the amount in decedent's checking account at the date of his death is a sufficient indication of its intention to accelerate the endorser's obligations on the three instruments here involved. The

bank was authorized to set off the debts due it from Mr. Caplan against the claim of his administratrix on his checking account under the circumstances of this case; such setoff will exhaust the funds in the said checking account. Accordingly, the exceptions to the adjudication entered in this estate on October 8, 1968, will be dismissed.

And now, to wit, March 4, 1969, exceptions having been filed to the adjudication entered on October 8, 1968, in the above-entitled estate, and the same having come before the court en banc, arguments having been made and briefs filed, upon consideration thereof it is ordered, adjudged and decreed that all of the exceptions be and they are hereby dismissed on the basis of the opinion filed.

It is further ordered that the above estate is entitled to the equity in the aforementioned contracts and for that purpose the bank shall reassign the contracts to the above estate when full payment has been received by the said institution.