JAMES JENKINS *vs.* JAMES P. WALTER.—*December,* 1836.

Though this court feels itself bound to shield a trustee, in the honest and faithful discharge of his duties, it is also bound to exercise a vigilant care in protecting the interests of those who, from their tender years are incapable of protecting themselves.

Thus where a guardian had received a sum of money belonging to his ward, and on the day of its receipt, had deposited it in a banking institution then in good credit, but which subsequently failed, and taken a certificate therefor payable to himself, or order; it was *held,* that the loss resulting from the failure of the bank should fall upon him, though on the day of the deposite, by endorsement on the certificate he declared it to be the property of his ward, and placed in bank for his benefit.

If in such a case the party making the deposite had failed before the bank, the money deposited would have enured to the benefit of his creditors, and the ward must have sustained the loss; and although the exhibition of the endorsement on the certificate might have defeated the claims of creditors, the bank itself might have applied the fund in satisfaction of any claim due it from the depositor.

*Quere,* whether the guardian would have been protected, if without the sanction of the Orphans' court, he had deposited the money in the name of his ward.

APPEAL from the Orphans' court of *Baltimore* county.

On the 23d August, 1836, *James P. Walter* filed his petition in the above court, charging that during his minority, the appellant as his guardian, had received his property and settled several accounts with said court, that since the petitioner had come of age, he had demanded the balance due him, and he had not been paid. Prayer for an account and relief.

The appellant by his answer, admitted the guardianship,

that he had settled accounts; and that on the day of his receiving a sum of money in which his ward was interested, (with two other of his wards,) he deposited the same in the *Bank of Maryland*, at an interest of five *per centum per annum*, and received from said bank a certificate of said deposite, on which said certificate he endorsed on the same day the words following, " The within $907 85 is the property of *James P. Walter, Joseph A. and Sarah Walter*, and placed in the *Bank of Maryland* for their benefit, *Baltimore*, August 13th, 1832," and signed his name thereto; that he afterwards obtained interest on said deposite, and stands charged therewith in his accounts settled with this court; that in the month of March, 1834, the said bank failed, and conveyed its whole estate to trustees for the benefit of creditors; that when the appellant made said deposite said bank was in high credit, and generally believed to be solvent and perfectly secure, and both before and after his deposite, was the selected place of deposite by this court; that he was advised not to part with said certificate, and still holds a certificate therefor, and that the petitioner knew his money was in the *Bank of Maryland*; that he is ready to pay the appellee's portion of said deposite in *Bank of Maryland* funds or notes, and submits to the court whether he is chargeable in any other mode.

The guardian's accounts settled with the Orphans' court, charged the appellant with so much cash generally; the certificate of deposite granted by the *Bank of Maryland*, on the day the guardian received the fund in controversy, was payable to *James Jenkins*, or order, and endorsed as follows:

" The within $907 85 is the property of *James P. Walter, Joseph A. Walter*, and *Sarah A. Walter*, and placed in the *Bank of Maryland* for their benefit. JAMES JENKINS,

*Baltimore, August 13th,* 1832. *Guardian.*"

There were also some endorsements of interest paid the guardian. It was in proof that before the failure of the bank, the guardian had exhibited this certificate thus endorsed for the purpose of showing that the fund belonged to his wards, and it was admitted that the bank before its failure was a depository frequently selected by the Orphans' court.

The Orphans' court (*Harwood*, *Payson*, and *Ridgate*,) decreed that the guardian should pay the balance due his ward with interest, until paid, from which decree the said guardian appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and STEPHEN, ARCHER, DORSEY, CHAMBERS, and SPENCE, Judges.

D. STEWART, for the appellant contended :

That the evidence showed, that *Jenkins* deposited the funds in his hands as guardian in the *Bank of Maryland;* that the money deposited was the ward's.   In case of accident to *Jenkins* upon this proof, his executor would have been a trustee for *Walter*.   At the time of the deposite he endorsed the certificate as his ward's.   His acts and declarations co-temporaneous with this deposite show, that he had segregated it from the mass of his property, and marked it, as belonging to his ward.   The responsive character of the answer, and the direct nature of the proof fully show this, and there is no countervailing evidence.   It is said however, that the deposite was made without authority, and upon the responsibility of the guardian.   The record shows that the *Bank of Maryland* was a favourite depository of funds, under the control of the Orphans' court of *Baltimore* county.   How far then can a guardian be charged with loss, because of no application by him to the court.   No application is required in such cases for the act of 1798, sub ch. 12, sec. 13, looks rather to the guardian himself as a depository, and in this case he acted *bona fide*.   I contend that if on application to the court, they would have ordered it to be made at five per cent. in the place selected by the guardian, and as he has acted with good faith he is not to bear the loss arising from the insolvency of the bank.   The court will consider the act done, as having their sanction, when they would have so ordered had application been made.   *Lee, et al vs. Stone and McWilliams*, 5 *Gill and John.* 19.   All the guardian wants

here for his perfect protection is the form and ceremony of a judicial order; and the court will award him that, when they see that all else was rightly done, and would have so ordered had a request been submitted, and he is not to suffer from misapplied confidence. 2 *Ves. Sr.* 241. *Rowth vs. Howell*, 3 *Ves. Jr.* 565. 3 *Bro. C. R.* 434. There is not the least evidence that the guardian mixed their funds with his own. On the day of their receipt they were deposited in the bank, and so remain now. And as the guardian has behaved throughout with the most perfect good faith—never endeavoured to reap any advantage from their funds, but prudently deposited them as he would have deposited his own funds, in an institution in high credit, and believed to be solvent, he ought not to suffer. *Bank of Maryland vs. Ruff, et al, ante.*

JOHN SCOTT, for the appellee contended:

That the decree below was right; that the guardian deposited the money in his own name, payable to his own order, to get a credit for himself with the bank, and in the settlement of his accounts with the Orphans' court charged himself *six per cent*. interest, when in fact he was only receiving *five per centum*, for which he had some motive personal to himself. That the endorsement on the certificate, declaring the funds deposited to be the property of his ward was not made at the bank, but the money deposited in his own name, there to gain a credit with the bank, and subsequently endorsed to save himself harmless. Under such circumstances it cannot be considered that the wards' money was deposited in bank. If *Jenkins* had intended this as a guardian's deposite, nothing was easier for him than to have had it so entered on the books of the bank, and face of the certificate. The ward is not affected by the guardian's subsequent acts and declarations. It results that this deposite was made without authority, and the guardian must bear the loss. Trustees are not to act contrary to law, they are presumed to know the law, and this defendant should have acted under instructions from the proper tribunals.

STEPHEN, Judge, delivered the opinion of the court.

This is an appeal from an order of the Orphans' court of *Baltimore* county, directing the defendant, *James Jenkins*, the late guardian of the appellee, to pay to him the sum of $490 84 with interest thereon, from the 28th March, 1836, until paid.  A part of this sum was deposited in the *Bank of Maryland* by the guardian of the appellee, on the day he received it from the executor on his ward's account; the bank at that time being in high credit and in prosperous circumstances.  The deposite however, was made and *the certificate* taken in his own name, and no communication was made to the bank at that time, that the money deposited was trust property.  The bank was to pay for the money deposited an interest of *five per centum per annum.*  On the certificate of deposite an endorsement was made, that the money deposited was the property of the appellee, but the fact of such endorsement was not at the time disclosed to the bank, and the appellant appeared upon the books of the institution to be the absolute proprietor of the sum deposited; and it does not appear that in his settlements with the Orphans court he ever communicated to that tribunal, that in making the deposite he acted in his fiduciary capacity, until the failure of the bank took place, in the year 1834.  In his second account settled with that court, it appears he charged himself with an interest of *six per centum per annum*, upon the amount of his ward's property in his hands, including the sum so as aforesaid deposited.  Upon this state of facts the question arises, upon whom the loss arising from the failure of the bank is to fall?  Is it to be borne by the ward, or ought the guardian to be held responsible for the consequences following from the ultimate insolvency of that institution?

According to the decision of the court below, the loss arising from that contingency is to be visited upon the appellant, and from that decision an appeal has been taken to this court for its revision, so that if erroneous, the error may be corrected.  Although, in this transaction there may have been the most upright intention, and perfect good faith on the part

of the guardian in making the deposite, still we are constrained to say, that we think the decision of the court below was correct, and that it ought to be affirmed. At the same time that this court feels itself bound to shield a trustee from harm, in the honest and faithful discharge of his duties in his fiduciary character, it is bound studiously to exercise a vigilant care in protecting the interests of those who, from their tender years, are incapable of protecting themselves. No principle seems to be better settled than that in such a case as this, any loss arising from a misplaced confidence in the solidity of a banking institution, or other depositories of trust property must be borne by the trustee, and not by his *cestui que* trust. By making the deposite in his own name, he gained a credit with the bank, and reaped all the advantages which could be derived from the apparent ownership of the sum deposited, assuming his authority so to make such a deposite, and having received the benefit, the law declares, and justice seems to require, that he should bear the loss. Nor is there any peculiar hardship in the establishment of such a principle, which would deter a prudent trustee from assuming upon himself the responsibilities of such a fiduciary relation ; as it is at all times in his power to avoid any risk or responsibility by clothing the transaction in its true colours, and making the deposite not in his own name, but in the name of him who is the real owner, and for whom he is trusted. That such is the doctrine of a court of equity, we need only refer to a case reported in 4 *Maddox's Ch. Rep.* That was the case of an agent, who gratuitously undertook the collection of debts for certain trustees, which he deposited with a banker, then in good credit, but who ultimately failed ; there as here, the money was deposited in his own name, and upon interest, and the *vice-chancellor* in delivering the opinion of the court expressed himself in the following emphatic terms. "This may be a case of individual hardship, but the court is bound to proceed upon those principles, which are deemed essential to the general interests of mankind. The defendant being the gratuitous agent of his sister's trustees,

receives their money which he mixes with his own, by paying it into his own bankers and on his own general account. These bankers were in the habit of paying him an interest of *three per cent.* on the moneys in their hands. The defendant says he meant to give credit to the trustees for their proportion of the interest, but he never made any intimation to that effect. This money is partly lost by the failure of the bankers; and the question is, whether the defendant can throw this loss upon the trust. I will not say what might have been the effect if he had placed these moneys in the same bankers' hands, with full information of the trust and to a distinct trust account. It is sufficient to say, that here the defendant gave no notice to the bankers that any part of the moneys in their hands was trust property. Both he and they treated the money as wholly his own; and the bankers considered themselves as his agents solely. It is said that he gave notice to the trustees that he had so invested the money, and that they did not object to it, and are therefore to be considered as having authorized it. If he had given full notice with whom he had invested it, and that he had mixed it with his own moneys, and that an interest would be derived from it, there would have been great weight in that argument, but his letter of the 26th of January, 1816, only states that it is in bank, not stating with what banker, or that it is mixed with his own moneys, or that a profit is to be derived from it. The fact alleged by the defendant, that he had always a balance in his bankers' hands equal to the trust money, is in my view of the case immaterial. I consider the trust moneys thus mixed with his own and placed in his banker's hands, on his own general account, to be an employment of the trust money for his own advantage or his own credit; and that he is therefore responsible for the loss which has resulted from it." It is true this was the case of a gratuitous agency for trustees, but the principles upon which he was held responsible, would, we think, equally have applied if the deposite had been made by the trustees themselves, and a loss under similar circumstances had subsequently

occurred. The reasoning of the court upon which the agent was held responsible, would equally have applied to his principals. The principle of the decision in 4 *Mad.* received the sanction of *Lord Chancellor Eldon,* in a case to be found reported in 11 *Vez.* 377. That was the case of a receiver who was charged with a loss arising from the failure of a banker, to whom remittances had been made to his own credit and use ; and not to a separate account for the trust. In that case the *Lord Chancellor* says, it would be most dangerous to let a receiver deal with the money as his own, until the time his accounts are to be passed, "and if any loss occurs, then to deal with it as the trust estate."

In the settlement of his second account with the Orphans court the appellant charged himself with the legal interest of *six per centum,* and not with the bank interest for which he had stipulated upon making the deposite. It is not readily perceived upon what ground this was done, unless he considered the deposite to have been made upon his own responsibility ; and if prior to the failure of the bank, he had become insolvent, the credit which he obtained with the bank on his own account would have enured to the benefit of his creditors, and his ward must have sustained the loss. In the case above referred to in 11 *Vez.* the *Lord Chancellor* says, if he (the receiver,) had failed before the failure of the bankers, this estate could never have claimed any part of the balance there, for it was carried to his own private credit, and there was nothing to prevent his paying any other debt with it ; and although the claims of creditors upon the fund deposited might be defeated by the exhibition of the endorsement upon the certificate, showing on whose account the deposite was made, yet we think it clear, the bank would have had a right to appropriate the money so deposited to the satisfaction of any demand they might have had against the appellant. This may be a case of some hardship to the appellant, but in such a conflict of interest it is of less consequence that individual injury should be sustained, than that the wisdom and policy of established principles should be violated.

Before closing this opinion we wish it however, to be distinctly understood, that we do not mean to decide that a guardian could protect himself from loss, by making the deposite in the name of his ward without the sanction of the Orphans court, but mean to leave that question unaffected by any views herein expressed.

We therefore think that the decree of the Orphans court of *Baltimore* county was correct, and ought to be affirmed with costs.

DECREE AFFIRMED.