Schiff *v.* Schindler et al., Appellants.

208

Argued October 4, 1929.

Before Porter, P. J., Trexler, Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Jacob Weinsten,* and with him *Marcus Berman,* for appellant.—An attaching plaintiff stands upon the exact right of the defendant and every defense interposed which would bar the defendant, will likewise bar the attaching plaintiff: Reichner v. Reichner, 237 Pa. 540; Willis v. Curtze, 203 Pa. 111; Smith v. Keener, 270 Pa. 578.

*N. S. Winnet,* and with him *B. Leon Brenner* and *J. J. Welsh,* for appellee.—A bank cannot apply a fund standing to the credit of a depositor to the payment of an unmatured debt: Manufacturers' National

Bank v. Jones, 2 Pennypacker 377; Kurtz v. County National Bank, 288 Pa. 472.

From the time of service, an attachment or garnishment is a lien that no act of the bank or depositor can shake off without consent of the creditor: Corn Exchange Bank v. Locher, 151 Fed. 764; Birmingham National Bank v. Mayer, 104 Ala. 634.

OPINION BY GAWTHROP, J., January 29, 1930:

Appellant, William Penn Title and Trust Company, hereinafter called the bank, seeks by this appeal the review of an order made by the municipal court of Philadelphia County making absolute appellee's rule for judgment against it as garnishee for want of sufficient answers to interrogatories in attachment execution.

On December 2, 1926, the plaintiff took judgment against the defendant for the sum of $194.58 for want of a sufficient affidavit of defense. On September 20, 1928, an attachment execution was issued and the bank was summoned as garnishee. In its answer to the interrogatories the bank set out that at the time the writ was served on it the defendant had a balance standing to his credit on deposit with it in the sum of $220.43, which it applied, after the attachment was served on it, to the partial payment of the indebtedness of the defendant on a promissory note for $500 given by him to it three days before—September 17, 1928, and payable three months after date; and that it appropriated the deposit by virtue of the terms of a written agreement made and signed by the defendant on March 8, 1928, which provided, inter alia, as follows:

"For the purpose of procuring credit from time to time, from the William Penn Title and Trust Company, the undersigned agrees in consideration of the granting of any credit that in case any suit, action or proceeding be taken or any judgment be entered in

any court against the undersigned, or any change occurs which materially reduces the ability of the undersigned to pay all claims and demands against the undersigned, then the undersigned will notify ...... Company, without delay, of such suit, action, proceeding, judgment or other change, and of the circumstances thereof; and that in the event of any failure, insolvency, bankruptcy or act of bankruptcy of the undersigned, or of any suit, action, proceeding, judgment, or change aforesaid, or default of notice thereof ...... then, and in any such event each and every claim and demand of the ...... Company against the undersigned shall, at the option of the ...... Company, immediately become due and payable ...... and all moneys, funds, stocks, bonds, notes and other property of the undersigned in the possession of the ...... Company may, at the option of the ...... Company, be held by it and appropriated to the payment and satisfaction of any or all of its claims and demands against the undersigned, both matured and unmatured.''

The single legal proposition raised is whether this agreement gave the bank the right, after the service of the writ of attachment execution upon it, to appropriate the deposit of the defendant to the partial payment of the note. Did this agreement permit the bank to avoid the effect of the general rule in this State, announced as long ago as the decision in Manufacturers National Bank v. Jones, 2 Penny. 377, that a bank has no lien on money standing to the credit of one of its depositors for the amount of a note of such depositor discounted by the bank, but which is not matured? See Kurtz v. County National Bank, 288 Pa. 472, in which the court said that ''there is no implied power to charge off the deposits and apply them to discounted notes not presently payable.'' The right of a bank to protect itself by an agreement to take over deposits

under fixed conditions in satisfaction of notes not due was recognized by our Supreme Court in the Kurtz case and in Blum Bros. v. Girard National Bank, 248 Pa. 148, and in Thompson v. Hazlewood Savings & Trust Co., 234 Pa. 452. In the Kurtz case Mr. Justice SADLER, speaking for the court said: "If the bank is in doubt as to its security it should not discount the paper, should make its notes payable on demand, or protect itself by an agreement to take over the deposits under fixed conditions in satisfaction of notes not due: Blum Bros. v. Girard National Bank, supra. But it has no right to appropriate the sums in its hands in payment of an unmatured obligation, in the absence of such an arrangement." So we held in an opinion this day filed in Southwark National Bank v. Beck, that an agreement similar to the one now under consideration, which provided for the acceleration of the maturity of obligations in the event of death of the depositor or other fixed conditions, and that the deposit should immediately become the subject of set-off against any indebtedness due or to become due by the depositor, amounted to a pledge of the deposit and gave the bank a lien thereon.

But the agreement in the case now before us is plainly distinguishable from that in Southwark National Bank v. Beck and is not so strong for the bank. While it provides "that each and every obligation of the defendant to the bank shall immediately become due and payable in the event of insolvency, bankruptcy or any suit, action or proceeding against the bank, and that all moneys, funds and property of the defendant in the possession of the bank may, at the option of the latter, be held and appropriated by it to the payment of any and all of its claims and demands against the defendant, both matured and unmatured," it does not provide that the bank under such circumstances shall have a lien on such moneys, funds or property, or that

the same shall immediately become the subject of set-off by the defendant against any liability or indebtedness due or to become due the bank by the depositor. We think the effect of this agreement was merely to give the bank an option to appropriate the deposit to the credit of the defendant to the payment of the note, the maturity of which was accelerated by the issuing of the attachment execution. While it authorized the bank to appropriate the depositor's balance in partial liquidation of the indebtedness on the note the moment the attachment execution issued, it gave it no lien on the deposit. As it failed to appropriate the same to the payment of the note until after the attachment execution was served upon it, it seems clear that the execution creditor acquired a lien on the funds of the defendant in the hands of the bank. The agreement in the case at bar is quite similar to that which was construed in Corn Exchange National Bank v. Locher, 151 Federal 764, where Judge DALLAS, speaking for the United States Circuit Court, decided that the agreement did not constitute a lien, but gave the bank an option which could not be exercised after the appointment of the receiver, because the rights of others had then attached. Wright v. Seaboard Steel and Manganese Corp., 272 Federal 807, United States Circuit Court, relied on by the learned counsel for appellant, is clearly distinguishable from the case at bar, because in that case the note itself contained the provision that the bank "is hereby given a lien for the payment of this note and of all other claims against the undersigned which now exist or which may hereafter arise in favor of the bank upon ...... the balance of any account of the undersigned with the bank." For these reasons we are constrained to hold that a proper conclusion was reached below.

The question of the right of the garnishee appellant to recover a counsel fee, to be taxed as part of the

costs under the Act of April 29, 1891, P. L. 35, will not be considered because it was not raised in the court below and was not stated by appellant as a question involved in this appeal.

The judgment is affirmed.