MESSALL AND HOWE *v.* SUBURBAN
TRUST COMPANY

[No. 424, September Term, 1965.]

*Decided December 2, 1966.*

*Motion for rehearing filed December 30, 1966, denied January 5, 1967. Opinion modified.*

The cause was argued on 9/14/66 before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.; and reargued on 10/11/66 before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and McWILLIAMS, JJ., and CARTER, J., Associate Judge of the Eighth Judicial Circuit, and PROCTOR, J., Associate Judge of the Third Judicial Circuit, both specially assigned.

*Robert V. Smith* (on both arguments), with whom was *W. Perry Doing* on the brief, for appellants.

*John C. Joyce* (on both arguments), with whom were *Robert*

*C. Christie* and *Duckett, Orem & Christie* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court. BARNES and McWILLIAMS, JJ., dissent. Dissenting opinion by BARNES, J., at page 511, *infra*.

Messall and Howe, the appellants, obtained a judgment for $34,484 against Merlands Club, Inc. and on July 29, 1964, laid an attachment in the hands of Suburban Trust Company in which Merlands had an account. Merlands had previously borrowed $11,800 from Suburban, the loan being evidenced by an unsecured promissory note dated September 25, 1963, payable at the rate of $400 per month on the twenty-fifth day, with 6% interest. An acceleration clause provided that upon nonpayment of any monthly installment when due, "all remaining installments shall immediately become due and payable, at the option of the holder." At the time the attachment was laid the note was current, $7,800 principal amount was still due, and Merlands had on deposit $15,352.31. Counsel for Messall and Howe went with the sheriff to the bank when the attachment was laid and learned of the amount of the deposit. The next day the bank made entries indicating the set-off and returned the note marked paid to Merlands. On August 4 Suburban filed its answer as garnishee, confessing assets due Merlands of $7,545.81 ($15,352.31 less the $7,800 principal balance of the note and interest of $6.50). On September 23 Messall and Howe took the deposition of an officer of Suburban and verified the terms of the note and the trust company's action in taking the set-off. On October 8 they filed exceptions to the garnishee's answer, alleging that the note was not in default when the attachment was laid or the answer filed, "the July payment having been made and the next payment not being due until August 25, 1964" and that the off-set was improper and contrary to law.

On December 22, 1964 Messall and Howe withdrew the exceptions and prayed that the hearing of the case be advanced. On the same day Suburban wrote to Merlands that, as it had previously advised Merlands on July 30, 1964, it had charged

Merlands' checking account in the amount of $7,806.50 in payment of its note, and added:

> "We are now informed by our Counsel that there is some question concerning our legal right to charge your account on that date inasmuch as the loan was not in default at that time. Pursuant to his advice, we are therefore making demand upon you to pay the four installments of $400.00 each which became due on the 25th day of August, September, October and November. Likewise, the installment due on the 25th of this month should be paid on or before the 28th.
>
> "Unless we receive the sum of $2,000.00 on or before the 4th of January 1965 we shall have no recourse but to exercise our option of accelerating the note pursuant to its terms and will consider the entire balance thereof due at that time."

No response was made to this letter and the case was tried in June 1965. On July 9 following, Judge Pugh found for the garnishee and on July 19 granted a judgment of condemnation absolute for $7,545.81 against Suburban with interest from July 29, 1964. Messall and Howe appealed from that judgment. We find Judge Pugh to have reached the correct result.

Many decisions of this Court have established that in essence and effect garnishment is a suit by the debtor against the garnishee for the use and benefit of the attaching creditor and, therefore, the holdings have been that the rights of the creditor vis a vis the garnishee cannot rise above those of the debtor. The liability of the garnishee to the attaching creditor in respect of property or credits in his hands is determined ordinarily by what his accountability to the debtor would be if the debtor were in fact suing him. If by the exercise of any preexisting bona fide contract right that accountability has been removed or lessened prior to trial, the garnishee's liability to the attaching creditor is correspondingly affected. The Maryland cases have spelled out that garnishment cannot have the effect of changing the nature of a contract between the garnishee and the debtor or of preventing the garnishee from performing an

existing contract with a third person, all of which is to say the creditor is subrogated to the rights of the debtor and can recover only by the same right, and to the same extent, as could the debtor if he were suing the garnishee. *B. & O. R. R. Co. v. Wheeler,* 18 Md. 372, 378-79; *Farmers and Merchants Bank v. Franklin Bank,* 31 Md. 404; *Odend'hal v. Devlin,* 48 Md. 439; *Farley v. Colver,* 113 Md. 379, 385; *Cole v. Randall Park Holding Co.,* 201 Md. 616, 623-24; *Thomas v. Hudson Sales Corp.,* 204 Md. 450, 457.

The rule as to when the rights of the parties in attachment become fixed varies. Most jurisdictions apparently hold that it is at the time of the laying of the attachment. Some set it at the time the answer of the garnishee must be filed. Maryland early adopted the rule that the time of trial and judgment controls. *Nicholson v. Crook,* 56 Md. 55, 57, adopted the rule of most jurisdictions that the attachment binds "not only the property of the defendant in the hands of the garnishee at the time it is laid, but also such property as may come into his hands at any time before trial and judgment" and earlier *Farmers and Merchants Bank v. Franklin Bank, supra,* facing the other side of the coin, held that where funds in a bank to the credit of a depositor are attached the bank may appropriate such funds to the payment of a debt to itself which had been contracted before the attachment but did not fall due until after the attachment and before trial. Judge Alvey, for the Court, said (pp. 412-13 of 31 Md.):

"There is nothing in the attachment law of this State to justify the conclusion that it was designed, by allowing garnishment to be made, to place the garnishee in a worse position, in reference to the rights and credits attached, than if he had been sued by the defendant. The attaching creditor seeks to have himself substituted to the rights of his debtor as against the garnishee, and by laying his attachment, he acquires no superior right to that of his debtor. The right of condemnation must, therefore, be subject to any such right of set-off or discharge existing at the time of garnishment, as would be available to the garnishee if he were sued by the defendant. Any other rule

would, in many cases, work gross injustice, and might, moreover, be subject to great abuse.

"What, then, were the rights of the garnishee in respect of the fund attached, if it had been sued for by the defendants, Mitchell and Oliver? As against them, there could be no question of the right of the bank to retain the amount on deposit to their credit in part payment of the debt against them, provided such debt was due and payable to the bank at the time of trial. *Union Bank v. Cochran,* 7 G. & J. 138; *Jenkins v. Walter,* 8 G. & J. 218; *Clarke v. Magruder,* 2 H. & J. 77; *Foley v. Mason,* 6 Md. 51. The only question, therefore, is whether the attachment having been laid on the 11th of May, 1867, and the note then held by the bank against the defendants for $4,500 not maturing until the 17th of June, 1867, the garnishment so affected the fund, or changed the relation of parties, as to defeat the right of set-off which would have been complete as against the defendants on the maturity of the note. We think not. For though the note was not due at the time of garnishment, and was not, therefore, actionable, it was, nevertheless, an existing debt, payable at a future time, and becoming due before trial, was good matter of set-off, as well against the attaching creditor as against his debtor.

"This right of set-off or discharge, as against the attaching creditor, should not, however, extend to any matter originating by the action of the garnishee, subsequent to garnishment, as otherwise it would be in the power of the garnishee in a majority of cases to defeat the right of condemnation, which should not, by any means, be allowed."

See also *B. & O. R. R. Co. v. Wheeler, supra,* as to permissible exercise of preexisting contract rights by the garnishee prior to trial.

The rule announced in *Franklin Bank* has been the law of Maryland since it was enunciated. *Franklin Bank* was cited in *Richardson v. Anderson,* 109 Md. 641, 647-48, for the proposition that a bank may, as against an attaching creditor, apply

funds of a depositor in its possession to the payment of any claim it has against the depositor "though its claim may not be due at the time of such attachment," and its holding was relied on in *Hayden v. Citizens' Nat. Bank of Baltimore,* 120 Md. 163, 166-67, as in part determinative of an analogous matter. Judge Henderson, for the Court, said in *Maryland Cooperative Milk Producers v. Bell,* 206 Md. 168, 174, in discussing a right to make a set-off:

> "Indeed, the Maryland cases seem to recognize a right of set-off as against an attaching creditor even where the obligation of the debtor is not due at the time of the attachment but becomes due before trial. *Farm. & Merch. Bk. v. Franklin Bk.,* 31 Md. 404, 412."

Massachusetts also recognizes that the garnishee has a right of set-off as to an obligation of the debtor not due at the time of attachment but maturing before trial. *Eddy v. O'Hara,* 132 Mass. 56, 61; *Sternheimer v. Harris,* 148 N. E. 447; *Lannan v. Walter,* 20 N. E. 196. The Supreme Court in *North Chicago Rolling Mill Co. v. St. Louis Ore & Steel Co., et al.,* 152 U. S. 596, 621-22, 38 L. Ed. 565, 573-74, referred to several Massachusetts cases and quoted *Franklin Bank.* The Court then noted that in each of the cases it had cited on the point the liability of the garnishee was "conditional and undeterminate" at the time of service of the garnishment process and his right to claim against the principal debtor did not become fixed until long thereafter and in all but one case the right to set-off arose under a contract which had been entered into before the service of the writ. The Court went on to say:

> "The latter clause of the quotation from the case of *Farmers' & Merchants 'Bank v. Franklin Bank, supra,* lays down the correct rule to be applied in cases of this character, and that rule is, that, while the garnishee may not, after service of the writ, by his own action acquire set-offs or counter-claims against the principal debtor to the prejudice of the attaching creditor, he may properly avail himself of all claims fairly arising out of contracts with the principal debtor which were in

existence when the attachment was commenced, and under or out of which his claim against the principal debtor arises."

We see no reason why *Franklin Bank* should not be adhered to and find it to control the case before us. Suburban concedes, as we think it must, that it had no right to off-set the Merlands note when it first attempted to do so on July 30, the day after the filing of the attachment, because the note was not then due. Its effort to do so would have been nugatory if trial of the attachment case had occurred before the note became payable in full because at that point the law did not permit an off-set. But before trial Suburban acknowledged its ineffectual error and gave Merlands an opportunity to make the note current. When this was not done, Suburban exercised its bona fide contract right which existed at the time the attachment was laid to accelerate the unpaid balance of the note and declare it immediately payable in full. Under the cases it had a right to do this as is illustrated by the fact that at the time of trial, if Merlands had been the plaintiff suing Suburban for the $15,352.31 it had on deposit on July 29, the day of the laying of the attachment, Suburban could have defended successfully and would not have been liable to pay Merlands the $7,806.50 which it had used to pay off Merlands' defaulted note. Messall and Howe had no rights at the time of trial below greater than those Merlands would have had had it been plaintiff.

The rule of set-off has equitable backgrounds. The trial court's action in the instant case was not inequitable under the rules the cases have established. Under no circumstances could Merlands have used any of its deposit to make the monthly payments on the note since the $15,352.31 it had in Suburban was all subject to the attachment in aid of the $34,484 judgment. Messall and Howe were fully aware long before trial of the existence and terms of the note and of the bank's intention to pay it off from Merland's balance on deposit. Assuming that they could have, they did not offer or attempt to step into Merlands' shoes and make the monthly payments. Indeed, if they had, equitably they could not have made some payments to

serve their own purposes without assuming liability for the full balance of the note, and had they done this they would have gained nothing. If Suburban had not attempted to pay the note in July and had waited until it became in default in August and then accelerated the balance due and paid itself, it, beyond question, would have been on sound ground and immune to challenge for its actions. The false step it took, which it corrected in time, hurt no one under the circumstances and we find that the result should be as it would have had the false step not been taken.

*Judgment affirmed, with costs.*

BARNES, J., filed the following dissenting opinion, in which McWILLIAMS, J., concurred.

I dissent for two reasons: (1) In my opinion the rule enunciated by the Court in 1869 in *Farmers & Merchants Bank v. Franklin Bank,* 31 Md. 404, that the garnishee's right of set-off extends to the *time of trial* was incorrect when decided, was unsupported by the authorities cited, is inconsistent with the rule established in subsequent decisions of this Court, is contrary to the great weight of authority in other jurisdictions, is contrary to a sound public policy and should now be overruled by this Court, and (2) assuming, *arguendo,* that we should continue to follow this unsound rule, the majority has misapplied it in the pending case.

### (1)

The curious thing about the opinion in the *Franklin Bank* case is that it first states the correct (and almost universal) rule in garnishment cases. Judge Alvey, for the Court, stated:

"There is nothing in the attachment law of this State to justify the conclusion that it was designed, by allowing garnishment to be made, to place the garnishee in a worse position, in reference to the rights and credits attached, than if he had been sued by the defendant. The attaching creditor seeks *to have himself substituted to the rights of his debtor* as against the garnishee, and by laying his attachment, he acquires no superior right to that of his debtor. The right of condemnation must, therefore, be subject to any such

right of set-off or discharge *existing at the time of garnishment,* as would be available to the garnishee if he were sued by the defendant. Any other rule would, in many cases, work gross injustice, and might, moreover, be subject to great abuse." (Emphasis supplied). (31 Md. at 412).

Then follows the unfortunate language and holding involved in the pending case.

"What then, were the rights of the garnishee in respect of the fund attached, if it had been sued for by the defendants, Mitchell and Oliver? As against them, there could be no question of the right of the bank to retain the amount on deposit to their credit in part payment of the debt against them, provided such debt was due and payable to the bank *at the time of trial. Union Bank v. Cochran, 7 G. & J. 138; Jenkins v. Walter, 8 G. & J. 218; Clarke v. Magruder, 2 H. & J. 77; Foley v. Mason, 6 Md. 51.*" (Emphasis supplied).

The four cases cited by the Court for this novel legal proposition do not support it, but rather the decision in one of the cases indicates a contrary doctrine.

*Union Bank v. Cochran, 7 G. & J. 138* (1835), was not an attachment case, but involved a question of the amount of a bank's claim against the estate of an insolvent partnership debtor then being administered in equity. The insolvent partnership had been indebted to the bank on certain promissory notes which the bank had reduced to a judgment for $22,500. When the creditor's bill was filed in the equity court, the bank set-off the sum of $3,877.44 which the insolvent partnership had on deposit to its credit at the bank. The question was whether the amount of the bank's claim in the equity case was to be reduced by the amount of the set-off. The Chancellor held that there should be such a reduction but his order to that effect was reversed by the Court of Appeals. Judge Stephen, for the Court, stated:

"The sum of $3,877.44, with interest, standing to the credit of Cochran & Comegys [the insolvent partner-

ship] in bank, we think the bank had a right to retain in part payment of her claim; because if suit had been instituted for the recovery of that sum, the bank could have successfully resisted the recovery of it, upon the ground of a right of retainer, she being *at the time a creditor* of Cochran & Comegys to| *a large amount."* (Emphasis supplied. 7 G. & J. at 142).

This case obviously does not sustain the rule for which it was cited in *Franklin Bank*. The *Cochran* case involved an *insolvent debtor,* and the indebtedness to the bank against which the deposit was set-off was *not only due and payable at the time of set-off but it had been reduced to judgment.* The quoted statement from *Cochran* that suggests a requirement that the debt to the bank be matured at the time of set-off, rather than the contrary, although, in view of the insolvency of the debtor, this would hardly have been required in the *Cochran* case.

*Jenkins v. Walter,* 8 G. & J. 218 (1836) did not involve a set-off, but held that a guardian, who in good faith deposited trust money in a bank which he believed to be solvent but in his own name rather than as guardian, was liable to his ward for the full amount of the money thus deposited. There is a *dictum* by Judge Stephen, for the Court, that if the guardian had become insolvent prior to the bank's insolvency, "the bank would have had the right to apply the money so deposited to the satisfaction of any demand they might have had against the appellant [the guardian]." (8 G. & J. 225). It is clear that this *dictum* involving the hypothesis of the prior insolvency of the depositor, does not support the rule for which it was cited in *Franklin Bank*.

In *Clarke v. Magruder,* 2 H. & J. 77 (1805), the General Court had held that the defendant could not set-off against the plaintiff's claim a note of the plaintiff acquired by the defendant at a discount and for the purpose of set-off after the plaintiff's action began. The Court of Appeals reversed the General Court without opinion,[1] so that it is not possible to know the

---

1. There was no requirement in the Maryland Constitution of 1776 as there is in the present Constitution of 1867 that the Court of Appeals write an opinion in each case. See Article IV, Section 15 of the present Constitution.

reasons on which the Court of Appeals rested the reversal. The Court of Appeals, however, in *Foley v. Mason,* 6 Md. 37, 51 (1854) interpreted the intended holding in *Clarke v. Magruder* as follows:

> "Since the case of *Clarke v. Magruder,* 2 H. & J. 77, was determined, it has been regarded as the settled law of this State, that a note drawn by the creditor may be set off, or pleaded in discount, by his debtor, although the latter may have obtained possession of the note, at a discount, and with the view of the set-off, after he became indebted to his creditor."

*Clarke v. Magruder, supra,* as interpreted by *Foley v. Mason, supra,* does not support the holding in *Franklin Bank.*

In *Foley v. Mason, supra,* the offer of the defendants to pay for certain goods ordered from the plaintiffs and to be paid for *in cash* with the plaintiff's *over-due notes* was held by the Court to be the practical equivalent of a tender to pay in cash as the defendants had the right to set-off the amount of these over-due notes, and hence there was no evidence of a fraudulent design by the defendants in purchasing the goods with a condition to pay cash. It is apparent that the holding in *Foley v. Mason, supra,* in no way supports the holding in *Franklin Bank;* the opinion of the Court indicates that the right of set-off was for "over-due" notes, not those which might mature subsequent to the filing of suit.

It is clear that the four prior Maryland cases, analyzed above, and cited by Judge Alvey in support of the holding in *Franklin Bank* not only do not support that holding, but, on the contrary, in one instance at least, indicate that the obligation to be set-off must be due and owing at the time of the filing of suit.

The question arises, however, whether our predecessors have relied on the holding in *Franklin Bank* (whether or not supported by the authorities cited for that holding) and have applied and followed it in subsequent cases, so that upon the principle of *stare decisis* we should now follow that holding. The majority of the Court apparently believes that "[T]he rule announced in *Franklin Bank* has been the law of Maryland since

it was enunciated." But a review of our subsequent cases indicates to me that our predecessors have never applied or followed that doctrine and hence, as no vested rights are involved and no established and long continued rule of law will be overthrown, I think we may now overrule the holding in *Franklin Bank* without injury to the doctrine of *stare decisis*.

Our predecessors in *Richardson v. Anderson,* 109 Md. 641, 72 Atl. 485 (1909) held that there could not be a set-off of a debt of an insolvent who had made an assignment for the benefit of creditors, which did not become due until after the assignment, against the claim of the trustee for the insolvent by a person who purchased a claim against the insolvent subsequent to the assignment for the benefit of creditors. Judge Thomas, for the Court, cites the *Franklin Bank* case with two other prior Maryland cases for the following proposition:

> "Most of the cases holding a contrary view are the decisions to the effect that a bank has a right to apply to the payment of a debt not yet due, held by it against an insolvent, money on deposit in the bank belonging to the insolvent at the time of his assignment for the benefit of creditors. The banks are held to have a lien upon deposits in their hands, to secure debts due them by their depositors, and may, as against an attaching creditor, or the assignee of an insolvent owner of such deposits, apply such deposits to the payment of any claim they may have against such depositors, though its claim may not be due at the time of such attachment or assignment. 2 *Am. & Eng. Ency. of Law* (1st Ed.), 97; *Miller v. Farmers' and Mechanics' Bank,* 30 Md. 392; *Farmers' and Merch. Bank v. Franklin Bank,* 31 Md. 404, and *Colton v. Drovers' Bldg. Assn., supra.* In some States, however, where the banks are held not to have any such lien upon the moneys of a depositor, they are denied the right in a suit by the assignee of an insolvent depositor to set off against the claim of the assignee the amount of any unmatured claim held by the bank against the depositor. *Chitman v. Ninth National Bank,* 120 Pa. St. 86, 13 Atl. Rep. 707." (109 Md. at 647-48).

The Court, however, distinguished the situation involved in the *Anderson* case as follows:

"In this case, at the time of the assignment, the claim of the defendant against the agency did not exist, and therefore the assignee took the claim against the defendant in favor of his assignor, free of any right to a set-off in favor of the defendant, whose claim against the assignor did not come into existence until after the assignment, and until he was required to pay assignor's note by virtue of his liability thereon as indorser. *Fidelity & Deposit Co. v. Haines,* 78 Md. 454." (109 Md. at 648).

It is clear that the Court's reference to *Franklin Bank* was in a *dictum* and that the main emphasis in the *dictum* was in regard to set-off in *cases involving insolvency.*

In *Hayden v. Citizens National Bank of Baltimore,* 120 Md. 163, 166-67, 87 Atl. 672, 673-74 (1913), the Court had before it a case involving the right of set-off by a bank of a deposit of an *insolvent* debtor against an existing note which had not yet matured. Here again the Court cites *Franklin Bank* with two other prior Maryland cases (both involving insolvent debtors)[2] for the proposition that in cases involving an insolvent debtor the set-off may be allowed. Judge Stockbridge, for the Court, stated:

"The doctrine announced in these cases has likewise received the approval of the Supreme Court of the

2. The inclusion of the Franklin Bank case with other Maryland cases involving set-off by a bank against an *insolvent debtor* leads one to think that our predecessors thought that Franklin Bank, itself, involved an insolvent debtor. There is some possible basis for this thought as the debtor in Franklin Bank was a partnership which took over for liquidation certain assets or claims of a prior *insolvent* partnership in which two of the former partners in the insolvent partnership and the deposit involved in Franklin Bank, in part, represented funds collected for creditors of the old insolvent partnership. These facts may, indeed, have resulted in Judge Alvey's thought that the existing note which matured after the attachment could be set-off, although a close reading of the case does not indicate that the new partnership debtor was, itself, insolvent.

United States in *Schuler v. Israel,* 120 U. S. 506. In that case a creditor of the depositor had attached the fund in the hands of the bank, and the bank endeavored to assert its lien for the benefit of a note which it had discounted and which was then not yet due, and in sustaining the right of a bank to the lien, the Supreme Court based its ruling on the ground that the bank had the same right against the garnishee as in defending itself against its debtor, and that in the latter case by filing a bill alleging the debtor's insolvency, and showing that if compelled to pay its debt to him, its claim, which was not yet due, would be lost, it could be relieved by a proper decree and procure a set off of the two claims. The view in this State has been consistently in accord with the line of cases last cited; *F. & M. Bank v. Franklin Bank,* 31 Md. 404; *Miller v. Bank,* 30 Md. 392; *Colton v. Drover's Building Asso.,* 90 Md. 85; * * *."

*Franklin Bank* is cited by the Court in the *Hayden* case as authority for set-off in cases involving *insolvent* debtors and in no way approves or follows *Franklin Bank* for the holding that in *garnishment* cases an obligation existing at the time of garnishment but maturing thereafter may be set-off if it has matured at the time of trial, even if the debtor is solvent.[3]

The most recent case citing the *Franklin Bank* case is *Maryland Cooperative Milk Producers v. Bell,* 206 Md. 168, 174-75, 110 A. 2d 661, 663-64 (1955). The *Bell* case involved a set-off which had matured and which had been applied before the

---

**3.** It should be noted that in both the *Richardson* and *Hayden* cases, the Court follows the general law applicable to assignments, i.e., that the creditor cannot set-off a debt of the assignor which matured after assignment. Cf. Morris, Use of Counterclaim and Recoupment: Availability Against Commercial Paper., 62 W. Va. L. Rev. 141 (1960). In *Hayden,* the Court recognized that the set-off statute did not permit a set-off at law of an unmatured debt but that a bill in equity was required to accomplish such a set-off in the event of the insolvency of the debtor. The holdings in these cases are, in my opinion, inconsistent with the holding in the *Franklin Bank* case.

attachment was laid. Judge Henderson, for the Court, stated that under all of the authorities this was sufficient to defeat the attachment and added the following:

> "Indeed, the Maryland cases *seem* to recognize a right of set-off as against an attaching creditor even where the obligation of the debtor is not due at the time of the attachment but becomes due before trial. *Farm. and Merch. Bk. v. Franklin Bk.,* 31 Md. 404, 412. In that case Judge Alvey said that the retention of the amount standing to the credit of a depositor 'was good matter of set-off, as well against the attaching creditor as against his debtor.' " (Emphasis supplied).

This statement is obviously a *dictum* and in no way indicates approval of *Franklin Bank*. It rather indicates amazement and at least some doubt—that the holding could have been made.

I conclude from this review of the cases that prior to the case at bar, this Court has not approved, applied or followed the holding in *Franklin Bank*.[4]

---

4. It is interesting to note that Franklin Bank was cited and analyzed by the Supreme Court of the United States in North Chicago Rolling Mill Co. v. St. Louis Ore and Steel Co., 152 U. S. 596, 622. 38 L.Ed. 565, 574 (1894). Curiously enough, Mr. Justice Howell Edmonds Jackson, for the Supreme Court, quotes with approval the correct rule originally stated by Judge Alvey, as above quoted in this dissenting opinion, and then states: "The latter clause of the quotation from the case of Farmers' and Merchants' Bank v. Franklin Bank, supra, lays down the correct rule to be applied in cases of this character, and that rule is, that, while the garnishee may not, after service of the writ, by his own action acquire set-offs or counter-claims against the principal debtor to the prejudice of the attaching creditor, he may properly avail himself of all claims fairly arising out of contracts with the principal debtor which were in existence when the attachment was commenced, and under or out of which his claim against the principal debtor arises." The St. Louis Ore and Steel Co. case involved an insolvent debtor and the Supreme Court held that the garnishee could set-off an unliquidated claim under an existing contract breached by the insolvent debtor, but that the garnishee would have to seek the intervention of a court of equity to accomplish this. In that case, it should be noted, the cause of action for the unliquidated claim arose *before* the writ of garnishment was served.

Why should we now overrule the holding in *Franklin Bank?*

In the first place, the holding is inconsistent with the general rule of law, expressed in a number of prior Maryland cases including the opinion in *Franklin Bank* itself, that "the garnishor stands in the place of the debtor" and for that reason the right of condemnation, in the words of Judge Alvey in *Franklin Bank,* "must, therefore, be subject to any such right of set-off or discharge *existing at the time of garnishment,* as would be available to the garnishee if he were sued by the defendant." (Emphasis supplied). It has been held in Maryland that generally the garnishor does stand in the place of the debtor and the extent of the garnishor's rights against the garnishee is determined by the rights the debtor would have if he sued the garnishee at the time the attachment is served on the garnishee. See *Bendix Radio Corp. v. Hoy,* 207 Md. 225, 114 A. 2d 45, 47 (1955) and prior Maryland cases cited therein.

It seems clear that if on July 29, 1964, the day the attachment was served, the debtor in the present case had sued the garnishee bank for its then balance in the bank of $15,352.31, the garnishee bank would have been liable to the debtor for that amount as the note at that time was not in default, and on no theory could become due and owing until there was a non-payment by the debtor of $400 principal and $39 interest on August 25, 1964. The garnishee bank concedes that its attempted set-off on July 30, 1964,—the day following service of the unit of attachment—was erroneous and unjustified.

Our predecessors have also held that upon the service of the writ of attachment upon the garnishee, the garnishor-creditor obtains an inchoate lien upon the goods and credits of the debtor *at the time of the service of the writ of attachment.* The rule has been held to be applicable to bank deposits. *Deibert v. State,* 150 Md. 687, 691, 133 Atl. 847, 849 (1926). See *Ohio Brass Co. v. Clark,* 86 Md. 344, 348, 37 Atl. 899, 900 (1897); *Cooke v. Cooke,* 43 Md. 522, 530 (1876). Upon judgment of condemnation absolute, the judgment relates back to the time of the service of the writ of attachment and the inchoate lien obtained by the garnishor at the time of service of the writ becomes consummate as of the time the writ was served. See *Rowan v. State,* 172 Md. 190, 197, 191 Atl. 244, 248 (1937)

and *Cockey v. Milne,* 16 Md. 200, 206 (1860). See also *Farmers Bank of Delaware v. Beaston,* 7 G. & J. 421, 429 (1836).

The notion that there may be a set-off of a claim of the garnishee unmatured and not due when the writ was served, is inconsistent with these holdings of the Court in the cases mentioned.

Although the *Cockey* and *Beaston* cases were decided prior to the *Franklin Bank* case, Judge Alvey did not refer to them or to the doctrine they established. He was faced with *two applicable, but competing rules of law,* but, unfortunately considered only one rule, i.e., *that the rights of the garnishor can never rise above those of the debtor in an action against the garnishee.* Even more unfortunately, he pursued this one maxim with a "relentless disregard of consequences 'to a dryly logical extreme' " [5] and in disregard of the other competing rule of law. As Judge Cardozo, speaking for the Court of Appeals of New York, in *Hynes v. N. Y. C. R. R. Co.,* 231 N. Y. 229, 236, 131 N. E. 898, 900, 17 A.L.R. 803, 807 (1921), a case quite unlike the pending case, aptly stated:

> "In such circumstances, there is little help in pursuing general maxims to ultimate conclusions. They have been framed *alio intuitu.* They must be reformulated and readapted to meet exceptional conditions. Rules appropriate to spheres which are conceived of as separate and distinct cannot, both, be enforced when the spheres become concentric. There must then be readjustment or collision."

Even more importantly, the decisions of our predecessors in the *Rowan, Deibert, Clark* and *Cooke* cases, *supra,* all occurring *subsequent* to the decisions in *Franklin Bank,* were, in my opinion, properly decided in accordance with the great weight of authority. The doctrine of law which they establish is, as I see it, inconsistent with the holding in *Franklin Bank.* We should now adhere to and reaffirm these later cases and overrule the prior inconsistent and unique holding in *Franklin Bank.*

Secondly, the holding that the garnishee may, in the absence of the debtor's insolvency or fraud or other special circumstance,

---

5. Cardozo, J. in Hynes v. N. Y. C. R. R. Co., infra.

set-off an indebtedness which was in existence but unmatured when the writ was served but which becomes due before trial, is unique to Maryland. An examination of cases throughout the United States indicates this, although there are a few cases which have given the right of set-off if the time of maturity occurs prior to filing of a plea or answer by the garnishee. See *Sternheimer v. Harris*, 253 Mass. 169, 148 N. E. 447 (1925); *Lannan v. Walter*, 149 Mass. 14, 20 N. E. 196 (1889). An Illinois statute expressly permits a garnishee to set off demands whether "due at the time of service of the garnishment summons or thereafter to become due * * *" Ch. 62, § 40, Ill. Stat. Ann. (Smith-Hurd, 1965 Supp.).

All of the other jurisdictions hold that the set-off may only be made by the garnishee if the obligation of the debtor is due and owing at the time of service of the writ of attachment. No jurisdiction, other than Maryland, holds that there may be a right of set-off if maturity occurs *prior to trial*. See the comprehensive annotation, *Garnishment of bank deposit as affected by bank's right to set off depositor's indebtedness to it against deposit or apply deposit to such indebtedness*. 106 A.L.R. 62, 110 A.L.R. 1259; Annotation, 57 A.L.R.2d 700; see also 38 C.J.S., *Garnishment*, sec. 203(c).

Thirdly, the rule of *Franklin Bank* makes the result in a given case turn upon *when* the particular case *comes to trial*, rather than on when it is filed. It is not the diligence of the attaching creditor *in promptly filing the attachment case* which is rewarded, but the ability of the garnishee to *postpone the trial* of the case until the garnishee's claim may become due and owing. With the present state of the dockets generally, the odds definitely favor the garnishee who is rewarded for delay in the time of trial, thereby cancelling out the attaching creditor's diligence in promptly laying the attachment. The result of the case, as a practical matter is transferred to the office of the assignment commissioner or assignment clerk and to me this is not consonant with a sound public policy. Nor would a holding that the garnishee's claim must be due and payable at the time of service of the writ work any unreasonable hardship upon banks posit will become additional collateral for any existing but unwho may protect themselves by providing that a balance on de-

matured obligation of the depositor upon the laying of any writ of attachment in the hands of the bank, see *Macon National Bank v. Smith,* 170 Ga. 332, 153 S. E. 4 (1930), *Jordan v. Lavin,* 319 Mass. 362, 66 N. E. 2d 41 (1946), or by incorporating in the note appropriate language for acceleration of the maturity of the note in the event of the entry of judgment against the maker, see *Machleder v. Dembo,* 100 N. Y. S. 2d 972 (Bronx County, 1949) ; or in the event of the service of a writ of attachment [6] against the maker in the hands of the bank. *Brown v. Maguire's Real Estate Agency,* 343 Mo. 336, 121 S. W. 2d 754 (1938).

In my opinion we should now return to more orthodox doctrine and overrule the holding in *Franklin Bank.*

### (2)

If it be assumed, *arguendo,* that the *Franklin Bank* rule should be continued, in my opinion the majority has misapplied that rule in the pending case. It may be stated, *in limine,* that the majority—apart from the misapplication of the rule—has *extended* the *Frankin Bank* rule beyond its original holding. As has been already pointed out, *Franklin Bank* involved an obligation to the bank existing at the time of service of the writ of attachment and which *by its terms* fully matured shortly after the writ was served, without further action either by the debtor or the garnishee. In the case at bar, further action by the garnishee was required to accelerate the note if there was non-payment of the $439.00 as of August 25, 1964, after notice of the installment due was given in accordance with the practice of the garnishee bank. This action by the garnishee subsequent to the service of the writ comes within the literal meaning of the sentence near the end of the opinion in *Franklin Bank* which was as follows :

> "This right of set-off or discharge, as against the attaching creditor, should not, however, extend to any matter originating by the action of the garnishee, sub-

6. In at least one jurisdiction, however, this type of an acceleration clause may not be effective because the acceleration occurs *after* the service of the writ of attachment. Schiff v. Schindler, 98 Pa. Super. 207 (1930).

sequent to garnishment, as otherwise it would be in the power of the garnishee in a majority of cases to defeat the right of condemnation, which should not, by any means, be allowed."

How true!

Quite apart from this aspect of the pending case, however, it is clear to me that even if the situation at bar does not fall within the *caveat* stated by Judge Alvey in *Franklin Bank*, the majority has still misapplied the rule set forth in that case. As Judge Alvey clearly states in *Franklin Bank* and as our predecessors have held several times since, there is a substitution of the attaching creditor-garnishor in the place of the debtor and the rights of garnishor are not superior to those of the debtor. See *Thomas v. Hudson Sales Corp.,* 204 Md. 450, 457, 105 A. 2d 225, 227 (1954) and prior Maryland cases cited in that case.

But it is also equally clear that the garnishor's rights are not *inferior* to those of the debtor. The law generally and in Maryland is that the garnishor is subrogated to the rights of the debtor against the garnishee at the time of service of the writ of attachment. *United States Fidelity and Guaranty Co. v. Williams,* 148 Md. 289, 300, 129 Atl. 660, 664 (1925). See also *Roberts v. First National Bank of Southern Maryland,* 157 Md. 36, 39, 145 Atl. 220, 222 (1929) ; *Thomas v. Hudson Sales Corp., supra.* See also 38 C.J.S., *Garnishment,* sec. 172.

What then were the rights of the debtor as of July 29, 1964, against the garnishee bank? It is not disputed that as of that date when the writ was served, the debtor (1) had the right to withdraw the entire sum of $15,352.31 it had on deposit with the garnishee bank and (2) it was entitled to the usual notice from the bank of the installment of $400 of principal and interest of $39 due on the note on August 25, 1964, with the right (a) to direct the payment of the $439 from the account of $15,-352.31 if that account was still in the bank on August 25, 1964, or (b) to pay the $439 from other funds if there were insufficient funds in the bank to the credit of the debtor on August 25, 1964, from which the debtor could direct the bank to apply to the payment of the $439 which became due on that date.

When the writ of attachment was served on July 29, 1964, *all* of those rights of the debtor passed by operation of law to the garnishor, who was then substituted in the place of the debtor, was subrogated to the debtor's rights against the garnishee, and who, also by operation of law, obtained in inchoate lien on the $15,352.31 then on deposit to the credit of the debtor in the garnishee bank. The garnishee bank—except for its admitted error in attempting to make at that time a set-off of $7,-806.50 on its unmatured note—recognized these principles as applicable and by its own action closed the account of the debtor in the bank, and set up a new account in the amount of $7,-545.81 (the difference between $15,352.31 and the erroneous set-off of $7,806.50) to the credit of the attachment case, as W. Wilson Rich, assistant vice-president of Suburban (the garnishee bank) testified at his deposition. It is clear that if the garnishee bank had acted properly it would have transferred the entire balance of $15,352.31 to the credit of the attachment case and would have been permitted a set-off of any amount which might have become due on the note at the time of trial.

The majority agrees that this was the proper action for the garnishee bank to have taken, but believes that at the time of trial the *entire* balance of the note had become due and payable. The defective set-off, it is maintained, was cured, without prejudice to the garnishor, by the letter of December 22, 1964, written by the garnishee to the debtor. I am unable to agree with this position.

The December 22nd letter was sent *to the debtor,* and no copy was sent *to the garnishor*. In the letter the garnishee bank demanded that *the debtor* pay four installments of $400 each which became due of the 25th day of August, September, October and November and further advised that the December 25th installment should be paid on or before December 28th. The letter stated that *unless* the garnishee bank received $2000 *on or before January 4, 1965* it would "have no recourse but to *exercise our option* of the note pursuant to its terms and will consider the entire balance thereof due at that time." (Emphasis supplied.) I believe that this letter was insufficient to accelerate the note for three reasons.

First, as mentioned before, it could hardly be clearer that

this letter was "matter originating by the action of the garnishee, subsequent to garnishment." It was the very type of an attempt to perfect a set-off, which Judge Alvey, in *Franklin Bank,* stated should not be allowed.

Second, the letter of December 22, 1964, is not the type of action by the bank necessary to accelerate the note. It is merely a threat to accelerate the note if payment of the $2000 were not made on or before January 4, 1965. The bank was required to exercise its option to accelerate given by the note by affirmative action on January 4, 1965, or thereafter. See Annotation, *What is essential to exercise of action to accelerate maturity of bill or note,* 5 A.L.R.2d 968. The record fails to establish that the bank did this. Indeed, the garnishor, having knowledge through the deposition of Mr. Rich that the note had been returned to the debtor marked "paid" and "cancelled" and that the garnishee had never demanded its return, has consistently maintained that the acceleration of the note, either in July or in December, was unauthorized and illegal.

Third, and most important *no notice was given the garnishor* of this change in position, either by sending the garnishor a copy of the letter of December 22 or by any other form of communication. Nor did the garnishee bank file any additional pleading in the attachment case which would put the garnishor on notice of its change in position. A notice to the debtor was obviously futile in this case as the debtor had no further practical interest in the matter as the total bank deposit would either go entirely to the garnishor or partly to the garnishor and partly to the garnishee whichever way the ultimate decision went in regard to the set-off. Moreover, the debtor had no legal interest in the deposit as its place was taken by the garnishor and the garnishor was subrogated to the debtor's rights against the garnishee bank.

If the garnishee bank had given notice to the garnishor of its intention to change its position and possibly accelerate the note if the $2000 were not paid at the future date mentioned in the letter of December 22, then the garnishor could then have availed itself of the debtor's rights (a) to direct the garnishee to apply the necessary amounts of principal and interest to keep the note from being in default or (b) itself advance the funds

from other sources to prevent the default. It seems clear that if a depositor demands that a deposit be applied to a debt due the bank, the bank must comply with that demand. *Mohan v. Woburn National Bank,* 313 Mass. 306, 47 N. E. 2d 289 (1943) ; *Guernsey v. Marks,* 55 Ore. 323, 106 P. 334 (1910) ; and *Boothe v. Farmers & Traders National Bank of LaGrande,* 53 Ore. 576, 98 P. 509 (1908). See also *Doty v. Ghinger,* 166 Md. 426, 171 Atl. 40 (1934) ; *Hammons v. Grant,* 26 Ariz. 344, 225 P. 485 (1924) ; 9 C.J.S., *Banks and Banking,* sec. 295. Undoubtedly if notice had been given to the garnishor of the bank's change of position, the garnishor would have directed an application of the attached funds to the necessary payments until the time of trial as it would clearly be to its advantage to do this rather than to lose the full amount of $7,806.50. It is common knowledge of which judicial notice may be taken,[7] that a person in a financial transaction will seek to take a position which is financially advantageous to him rather than one that is not advantageous to him. The garnishor would obviously prefer to have $3,087.50 than nothing at all and if given notice of the garnishee bank's change of position would have given the necessary instruction to pay the installments on the note to keep it from maturing prior to trial. The suggestion in the majority opinion that the garnishor could not make these payments without assuming liability for the whole debt, is in my opinion, without merit. There is no equity or logic in a rule which grants the garnishor a right with one hand and takes the right away with the other.

In the present case if notice had been given and the garnishor had elected to have the installments paid, the garnishee bank would have received 11 payments of principal prior to the time of trial (the payments due August 25, 1964, to and including June 25, 1965) amounting to $4,400 and $319 of interest, a total of $4,719 rather than $7,806.50, so that of the $7,806.50 wrongfully set-off, the garnishee bank would have received $4,-719 and the garnishor the remaining $3,087.50. Then too, if notice had been given and the payments authorized, there would

---

7. Cf. Sellers v. Qualls, 206 Md. 58, 65, 110 A. 2d 73, 76-77 (1954).

most likely have been a trial of the garnishment case at an earlier date than July 13, 1965, with a corresponding reduction in the amount of payments to the garnishee on account of the note. I conclude, therefore, that the failure of the garnishee bank to give notice of its change of position to the garnishor subsequent to the attachment prevented the garnishor from exercising its rights as garnishor and that the most the garnishee bank would be entitled to under these circumstances even applying the rule of the *Franklin Bank* case, is $4,719.00 rather than $7,806.50, if indeed it is entitled to anything at all in view of the bank's failure to take affirmative action to accelerate the note prior to trial. I would reverse the judgment of the lower court.

I am authorized to state that Judge McWilliams concurs in the views herein expressed.